**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK W. DOBRONSKI,

             Plaintiff,

v.

FRACTEL LLC,
a Florida limited liability company,

NUSO, LLC,
a Missouri limited liability company,

"CONSUMER TRANSPARENCY
GROUP," (name used in prerecorded
messages; true legal name unknown); and

DOE DEFENDANTS I - X,

             Defendants.

Case: 2:26−cv−10464
Assigned To : McMillion, Brandy R.
Referral Judge: Stafford, Elizabeth A.
Assign. Date : 2/9/2026
Description: CMP MARK
DOBRONSKI V FRACTEL LLC ET AL (SS)

_____

**COMPLAINT**

NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria*

*persona*, and for his complaint against the named Defendants alleges:

**NATURE OF THE ACTION**

1. This is a consumer rights case under the Telephone Consumer Protection

Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Home Solicitation

Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*, and the Michigan Consumer Protection Act ("MCPA"), M.C.L. § 445.901, *et seq.*, and the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, arising from a coordinated campaign of prerecorded telemarketing robocalls to Plaintiff's residential telephone line, which is billed on a per-call basis, promoting a purported credit-card debt relief program.

2.      Between January 20, 2026 and February 6, 2026, Plaintiff received at least sixty-nine (69) calls delivering the same identical prerecorded/AI message identifying as "Ava with Consumer Transparency Group."

## PARTIES

3.      Plaintiff Mark W. Dobronski ("Plaintiff") is an individual, of the age of majority, a citizen of the United States of America, has a domicile in Orange County, Florida, and has a residence in Washtenaw County, Michigan.

4.      Defendant FracTel LLC ("FracTel"), is a limited liability company organized and existing under the laws of the State of Florida, with its principal office located at 122 4th Avenue, Suite 201, Indiatlantic, Florida 32905, which is qualified and registered to do business in the State of Michigan, with a registered office located at 40600 Ann Arbor Road East, Suite 201, Plymouth, Michigan 48170.

5.      Defendant NUSO, LLC ("NUSO") is a limited liability company

2

organized and existing under the laws of the State of Missouri, with its principal office located at 406 North Main Street, Suite B, Rolla, Missouri 65401, which is qualified and registered to do business in the State of Michigan, with a registered office located at 186 North Main Street, Floor 2, Suite 1, Plymouth, Michigan 48170.

6.     Defendant "Consumer Transparency Group" ("CTG") is the name used in the prerecorded messages. Plaintiff presently cannot determine whether "Consumer Transparency Group" is CTG's true legal name, a trade name, or a fictitious name used to conceal identity. Plaintiff therefore sues CTG under the name used in the calls and will amend this Complaint to substitute the true name(s) once discovered.

7.     Defendants Doe Defendants 1–10 ("Doe Defendants") are persons and entities who, on information and belief, controlled, operated, financed, provided dialing/AI voice or platform infrastructure, provisioned or managed telephone numbers, supplied leads, processed payments, or otherwise participated in or benefitted from the unlawful calling campaign.

## JURISDICTION

8.     This Court has subject matter jurisdiction under 28 U.S.C. § 1331 because Plaintiff's claims arise under the TCPA.

9.     This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's Michigan statutory claims because they form part of the same case or

controversy.

10. This Court has personal jurisdiction over the Defendants pursuant to M.C.L. § 600.715 as a result of Defendants doing or causing an act to be done, or consequences to occur, in the state resulting in an action for tort.

## VENUE

11. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because Plaintiff received the telephone calls in this District, to wit: at Plaintiff's residence in Washtenaw County, Michigan, and suffered injury here.

## FACTUAL ALLEGATIONS

12. Plaintiff maintains a residential telephone number ending in **24 ("Plaintiff's Number"), which he uses primarily for personal, family, and household purposes.

13. Plaintiff's Number is assigned to a service for which Plaintiff is charged on a per-call and per-minute basis and is therefore protected under the TCPA.

14. Plaintiff's Number is listed on the National Do Not Call Registry and has been so listed since at least June 29, 2003, and contiuously thereafter, and at all times relevant hereto.

15. Plaintiff has never provided Defendant with prior express consent or prior express written consent to place telemarketing calls to Plaintiff's Number.

4

16.     Plaintiff has never released his telephone number to Defendant in any manner that would constitute knowing or voluntary consent to receive telemarketing calls.

17.     Plaintiff is the customary user of the called telephone line, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same.  Thus, Plaintiff has standing to bring this action for alleged violations of TCPA's provisions. *Leyse v. Bank of America Nat. Ass'n,* 804 F.3d 316, 324 (3rd Cir., 2015).

18.     Between January 20, 2026 and February 6, 2026, Plaintiff received at least sixty-nine (69) calls to Plaintiff's Number.

19.     Defendant FracTel is, on information and belief, a voice service provider and/or SIP/VoIP carrier that provided call origination, routing, interconnection, and/or intermediate transit services for fifty-five (55) of the calls at issue.

20.     Defendant NUSO is, on information and belief, a voice service provider and/or SIP/VoIP carrier that provided call origination, routing, interconnection, and/or intermediate transit services for fourteen (14) of the calls at issue.

21.     Each call delivered an artificial/prerecorded voice message, using an AI/prerecorded voice identifying itself as "Ava with Consumer Transparency Group," and attempting to induce a return call and engagement in a purported consumer

debt-relief program.

22. The calls were telephone solicitations and telemarketing because their purpose was to encourage the purchase of services.

23. The displayed caller-ID telephone number varied across calls, reflecting number rotation consistent with evasion and identity masking.

24. The calls displayed no meaningful caller-name identification and showed only generic city/state caller-ID name information, further consistent with identity masking when combined with uniform prerecorded content and number rotation.

25. None of the prerecorded messages provided any opt-out capability, including no automated interactive key-press opt-out mechanism during the call and no call-back mechanism that provided opt-out.

26. None of the prerecorded messages provided a telephone number or address for the seller/caller or otherwise provided meaningful information sufficient for a consumer to determine the legal identity of the calling party.

27. As the calls occurred, Plaintiff provided FracTel and NUSO, directly and/or through complaint channels, contemporaneous, time-stamped notice identifying the unlawful calls — including date, time, displayed caller-ID number, and caller-ID name (if any) — for each call.

28. In addition, Plaintiff provided audio recordings of the prerecorded

messages to FracTel and NUSO as the calls occurred and/or shortly thereafter, confirming the calls' identical prerecorded content, the "Ava / Consumer Transparency Group" identification, and the absence of opt-out and meaningful seller identification.

29.     Plaintiff's call-specific notices, and recordings supplied more than sufficient information for FracTel and NUSO to determine whether the calls traversed their networks and, if so, to identify the relevant ingress/egress points, trunks, upstream counterparties, and associated accounts through ordinary call detail records and routing/interconnect data. The recordings eliminated plausible ambiguity regarding the nature of the calls and their uniform campaign characteristics.

30.     Despite this detailed notice and audio proof, the prerecorded calling campaign continued.

31.     FracTel and NUSO attempted to deflect responsibility by asserting that Plaintiff's proper avenue of relief was to complain to the Federal Communications Commission ("FCC"). Plaintiff did so: Plaintiff submitted an FCC complaint/ticket for each call (or each logged call), contemporaneously with the calling campaign.

32.     The existence of repeated FCC complaints, coupled with Plaintiff's direct call-specific notices and audio recordings, further confirms actual notice, the ongoing nature of the campaign, and Defendants' knowledge that the traffic was abusive and

unlawful — yet the calls continued.

33.    FracTel and NUSO's instruction to "complain to the FCC," rather than taking mitigation steps within their control after receiving call-specific proof, supports an inference of willful disregard and ratification.

34.    Public consumer-protection sources have warned that robocalls identifying as "Ava" from "Consumer Transparency Group" (or confusingly similar names) are associated with an apparent scam involving deceptive debt-relief solicitations.

35.    The Better Business Bureau ("BBB") has published a public warning describing an apparent scam associated with callers using the name "Consumer Protection Group" and similar variants, warning consumers about deceptive robocalls and the use of vague or misleading representations to induce return calls or disclosure of personal information.

36.    In addition, Trustpilot contains dozens of consumer complaints describing robocalls identifying as "Ava with Consumer Protection Group" (or materially indistinguishable variants), reporting substantially similar prerecorded messages, caller-ID rotation, lack of meaningful identification or opt-out, and attempts to solicit sensitive personal and financial information.

37.    In warning letters released on December 3, 2025 as part of a publicly

issued press release concerning traceback activity, the Anti-Robocall Litigation Task Force, a bipartisan task force of 51 state attorneys general which was formed to take action against companies responsible for large volumes of fraudulent and illegal robocall traffic, identified NUSO as an entity receiving or relaying suspected illegal robocall traffic in the course of tracing examinations.

38. These independent, publicly available warnings and complaints corroborate Plaintiff's allegations that the calls at issue were part of a widespread, ongoing, and deceptive robocall campaign rather than isolated or accidental calls.

39. The existence of widely disseminated consumer warnings and complaints further supports a reasonable inference that FracTel and NUSO knew or should have known that the traffic they were carrying and enabling was unlawful and abusive, and that FracTel and NUSO's continued provision of services after notice constituted willful facilitation, ratification, and knowing allowance of TCPA violations.

40. FracTel and NUSO initially asserted that the displayed caller-ID numbers were "spoofed" and that the calls did not traverse their networks.

41. Plaintiff tested those assertions by calling back displayed caller-ID numbers.

42. Upon calling back, Plaintiff was connected to an AI voice system again identifying as "Ava" from "Consumer Transparency Group" pitching debt-relief

services.

43. The callback system likewise provided no opt-out capability and no meaningful identifying information (no verifiable legal name, no business address, and no meaningful contact information).

44. The callback AI voice system prompted the consumer to provide personal identifying information, including credit card information and Social Security Number.

45. These facts are inconsistent with random spoofing of unrelated third parties and support the inference of a coordinated robocalling campaign using number rotation and centralized AI/IVR infrastructure.

46. Plaintiff alleges at least sixty-nine (69) prerecorded telemarketing calls between January 20, 2026 and February 6, 2026. Plaintiff further alleges, on information and belief, that the unlawful calling campaign exceeded sixty-nine (69) calls.

47. During the same general time period, Plaintiff received additional inbound calls in which the caller disconnected before Plaintiff could answer, preventing Plaintiff from determining whether those calls delivered the same prerecorded "Ava / Consumer Transparency Group" message.

48. Plaintiff further alleges that similar calls occurred prior to January 20,

2026, but were not logged by Plaintiff at the time.

49. Given the volume and frequency of the campaign, the uniform prerecorded content confirmed by recordings, and identity-masking indicators including number rotation, it is reasonable to infer that these additional hang-up calls and earlier unlogged calls were part of the same unlawful campaign.

50. The precise number, dates, times, and routing paths of these additional calls are within Defendants' exclusive possession, custody, and control and will be determined through discovery.

51. Plaintiff maintained contemporaneous call records for the unlawful calls at issue. Following is a table which sets forth the date and time of each call, the displayed caller-ID number, the caller-ID name, and the carrier identified as carrying the call.

| DATE / TIME[1] | CALLER ID | CALLER ID NAME | CARRIER |
|---|---|---|---|
| 1/20/2026 22:42 | 17079435124 | MIRANDA CA | FracTel |
| 1/20/2026 23:34 | 17477444662 | SAN FERNANDO CA | FracTel |
| 1/21/2026 00:01 | 16807999635 | COPENHAGEN NY | FracTel |
| 1/21/2026 18:08 | 14134211201 | HOLYOKE MA | NUSO |
| 1/21/2026 20:06 | 17733406408 | CHICAGO ZONE IL | NUSO |
| 1/21/2026 20:06 | 14698425663 | PROSPER TX | FracTel |
| 1/21/2026 20:41 | 14246999419 | TORRANCE CA | FracTel |
| 1/23/2026 18:18 | 14785000671 | EASTMAN GA | FracTel |
| 1/23/2026 18:35 | 15753456946 | CANNON AIR F NM | FracTel |
| 1/23/2026 19:25 | 12793567178 | FOLSOM CA | FracTel |
| 1/23/2026 21:08 | 12179431068 | TAYLORVILLE IL | NUSO |

---

[1] Date/Time shown is Coordinated Universal Time (UTC). Eastern Standard Time (EST) is *minus* 5 hours UTC.

| | | | |
|---|---|---|---|
| 1/24/2026 18:08 | 12794658599 | FOLSOM CA | FracTel |
| 1/26/2026 17:51 | 18269999770 | BOONES MILL VA | FracTel |
| 1/26/2026 18:21 | 16819463204 | IAEGER WV | FracTel |
| 1/27/2026 17:32 | 13159013848 | SYRACUSE NY | NUSO |
| 1/27/2026 18:50 | 15679000187 | TOLEDO OH | FracTel |
| 1/27/2026 20:36 | 14247867197 | MALIBU CA | FracTel |
| 1/27/2026 22:30 | 15319009394 | WEST POINT NE | FracTel |
| 1/28/2026 18:12 | 14322265855 | FRANKEL CITY TX | FracTel |
| 1/28/2026 18:24 | 13857666737 | ALTA UT | FracTel |
| 1/28/2026 18:58 | 16297586469 | DICKSON TN | FracTel |
| 1/28/2026 19:17 | 14096999816 | BUNA TX | FracTel |
| 1/28/2026 19:49 | 18387326678 | GREENWICH NY | FracTel |
| 1/28/2026 20:26 | 15863456391 | MOUNT CLEMEN MI | FracTel |
| 1/28/2026 22:03 | 19497737516 | NEWPORT BEAC CA | FracTel |
| 1/29/2026 15:55 | 19569333990 | MISSION TX | FracTel |
| 1/29/2026 15:57 | 18507719359 | PANAMA CITY FL | NUSO |
| 1/29/2026 17:45 | 19287325558 | LAKE HAVASU AZ | FracTel |
| 1/29/2026 18:56 | 13619666645 | ROBSTOWN TX | FracTel |
| 1/29/2026 19:08 | 17436000291 | HIGH POINT NC | FracTel |
| 1/29/2026 19:17 | 14428666893 | BRAWLEY CA | FracTel |
| 1/30/2026 21:00 | 15019463138 | BENTON AR | FracTel |
| 1/30/2026 21:08 | 12203000924 | WILKESVILLE OH | FracTel |
| 1/31/2026 17:54 | 16262546582 | ARCADIA CA | NUSO |
| 1/31/2026 18:06 | 17473456352 | SAN FERNANDO CA | FracTel |
| 1/31/2026 18:30 | 16204451847 | LAFONTAINE KS | FracTel |
| 1/31/2026 20:43 | 12054763994 | MONTEVALLO AL | NUSO |
| 1/31/2026 21:51 | 18057867074 | SAN LUIS OBI CA | FracTel |
| 1/31/2026 21:51 | 18068777346 | AMARILLO TX | FracTel |
| 2/2/2026 14:29 | 19304000994 | EAST ENTERPR IN | FracTel |
| 2/2/2026 19:32 | 17433567507 | DENTON NC | FracTel |
| 2/2/2026 20:09 | 14066308660 | SIDNEY MT | NUSO |
| 2/2/2026 20:16 | 15156660281 | DES MOINES IA | FracTel |
| 2/3/2026 20:10 | 17625293822 | AUGUSTA GA | FracTel |
| 2/3/2026 20:32 | 12099297953 | STOCKTON CA | NUSO |
| 2/3/2026 21:40 | 12239009278 | HERSHEY PA | FracTel |
| 2/3/2026 22:13 | 14306999475 | DRY CREEK TX | FracTel |
| 2/3/2026 23:45 | 12627663398 | EAST TROY WI | FracTel |
| 2/4/2026 14:47 | 13349666918 | HARTFORD AL | FracTel |
| 2/4/2026 15:01 | 13305822859 | DELLROY OH | NUSO |
| 2/4/2026 17:39 | 16829777160 | AZLE TX | FracTel |
| 2/4/2026 19:30 | 12027883277 | WASHINGTON Z DC | NUSO |
| 2/4/2026 21:14 | 15393368070 | CEDARCREST OK | FracTel |
| 2/4/2026 22:33 | 19793486451 | NORTHRUP TX | FracTel |
| 2/4/2026 23:15 | 18262223703 | BROKENBURG VA | FracTel |

| | | | |
|---|---|---|---|
| 2/5/2026 15:42 | 15829999454 | BERLIN PA | FracTel |
| 2/5/2026 17:20 | 15857999019 | BYRON NY | FracTel |
| 2/5/2026 18:40 | 13028444941 | SMYRNA DE | FracTel |
| 2/5/2026 19:43 | 14308999235 | NECHES TX | FracTel |
| 2/5/2026 19:58 | 12236000544 | LIVERPOOL PA | FracTel |
| 2/5/2026 21:22 | 16617444311 | PALMDALE CA | FracTel |
| 2/5/2026 21:30 | 14583441407 | EUGENE OR | NUSO |
| 2/5/2026 21:57 | 13855145880 | OGDEN UT | NUSO |
| 2/6/2026 15:16 | 18403456613 | POMONA CA | FracTel |
| 2/6/2026 17:08 | 14022708408 | COLUMBUS NE | NUSO |
| 2/6/2026 17:21 | 17157282310 | EAU CLAIRE WI | NUSO |
| 2/6/2026 17:27 | 12195678953 | FRANCESVILLE IN | FracTel |
| 2/6/2026 18:55 | 14429777182 | OCEANSIDE CA | FracTel |
| 2/6/2026 20:16 | 13079009544 | GLENDO WY | FracTel |

52.     Based on these records, Plaintiff received at least sixty-nine (69) calls between January 20, 2026 and February 6, 2026. NUSO carried fourteen (14) of the calls and FracTel carried fifty-five (55) of the calls.

53.     Each of the prerecorded calls delivered the same identical recorded message. By way of example, the recorded message stated, verbatim, as follows:

> "Hi this is Ava from Consumer Transparency Group. Just trying to reach you real quick about a recent information that came across my desk. When you get a minute, please give me a call back."

54.     The recorded message did not provide any opt-out mechanism, did not provide any telephone number or address for the caller, and did not meaningfully identify the legal entity responsible for the call. The message was deliberately vague and designed to induce a return call without providing meaningful identifying information.

13

55.     Defendants' own call detail records, routing data, and interconnect logs will corroborate Plaintiff's call records and identify all calls placed as part of the campaign, including additional calls to be identified through discovery.

56.     On information and belief, FracTel and NUSO provided telecommunications services—including origination, routing, interconnection, and/or intermediate transit—necessary for the unlawful calls to reach Plaintiff.

57.     The calling campaign could not have reached Plaintiff without telecommunications services supplied by one or more voice providers, including FracTel and/or NUSO.

58.     Plaintiff contemporaneously provided FracTel and NUSO call-specific, time-stamped notice and audio recordings of the identical prerecorded campaign, thereby placing each on actual notice of an ongoing prerecorded telemarketing robocall campaign.

59.     Plaintiff's notices, recordings, and FCC tickets provided sufficient identifiers to enable each Defendant to determine whether the calls traversed its network and to identify ingress/egress points, trunks, upstream counterparties, and associated accounts through ordinary carrier records and routing/interconnect data.

60.     Despite repeated, call-specific notice and audio proof, the campaign continued. On information and belief, FracTel and NUSO continued to carry and

14

profit from the traffic after actual notice rather than suspending, blocking, mitigating, tracing back, or otherwise intervening within their control.

61.     Plaintiff does not seek to impose liability on FracTel or NUSO merely because they are carriers. Plaintiff alleges liability based on post-notice conduct: continued provision of essential telecommunications services after receiving call-specific proof of the unlawful campaign, thereby materially assisting, facilitating, and ratifying the unlawful calls.

62.     To the extent Defendants assert "spoofing," spoofing concerns the accuracy of the caller-ID field; it does not establish that the calls did not traverse Defendants' networks or that Defendants lacked the ability to identify upstream sources through records and routing data. Plaintiff's callback testing further undermines the claim that the displayed numbers were merely unrelated spoof victims and supports the inference of a coordinated, traceable campaign.

63.     A platform provider or telecommunications service provider may be held directly liable for calls that violate the TCPA where it is directly involved in the creation or deployment of an unlawful robocall campaign. The FCC has held that such liability exists where the provider, among other things, (a) is directly involved in the creation of the content of illegal robocall campaigns, (b) controls the messaging or timing of the message, (c) controls or materially influences the recipient list, (d)

15

willfully enables spoofing of telephone numbers, (e) assists its telemarketing customer in blocking or suppressing caller identification, or (f) knowingly allows the telemarketer to violate the TCPA. *In re Rules and Regulations Implementing the TCPA,* 30 FCC Rcd. 7961, 7980, 2015 WL 4387780, at *11, ¶ 30 (2015).

64. As alleged herein, Defendants FracTel and NUSO, directly and/or through affiliated or upstream platform services, fall within one or more of the FCC-recognized bases for direct liability. Defendants knowingly carried and enabled a prerecorded robocall campaign that used rotating caller-ID numbers, generic or suppressed caller-ID name information, and uniform prerecorded content, continued transmitting the calls after receiving call-specific notice and audio recordings, and failed to take mitigation steps within their control. These facts support a reasonable inference that Defendants knowingly allowed, materially assisted, and/or willfully enabled violations of the TCPA within the meaning of the FCC's 2015 Order.

65. Parties act in concert when they act pursuant to a common plan or understanding to cooperate in a particular course of conduct or to accomplish a particular result. The agreement need not be express; it may be implied from the parties' conduct. A defendant who embraces or advances another's wrongful purpose—whether by agreement or by affirmative acts of assistance—may be held liable for the resulting tortious conduct, including where the defendant aids,

16

encourages, facilitates, or ratifies the wrongful acts. In the TCPA context, substantial assistance includes, among other things, continuing to provide dialing, routing, numbering, caller-ID configuration, or related telecommunications services after receiving actual notice that such services are being used to place unlawful prerecorded telemarketing calls.

66. Civil liability among coconspirators and concerted actors is joint and several. All persons who, in furtherance of a common plan to commit a tortious act, actively participate, cooperate, request, provide substantial assistance, lend aid or encouragement, or ratify and adopt the acts done for their benefit are equally liable for the resulting damages.

67. At all relevant times, the telemarketer operating under the name "Consumer Transparency Group," together with Defendants FracTel and NUSO and any associated platform providers, acted as agents and/or subagents of one another, or with apparent authority, in furtherance of the prerecorded telemarketing campaign described herein. Defendants knowingly provided and continued to provide telecommunications services, routing, numbering, caller-ID configuration, and related infrastructure that enabled the calls to be placed and facilitated CTG's scheme, while permitting the telemarketer to hold itself out to consumers as an authorized caller. Defendants' conduct—including post-notice continuation of service, facilitation of

identity-masking practices, and acceptance of the benefits of the calling campaign—supports a reasonable inference of actual authority, apparent authority, and ratification, rendering each Defendant liable for the acts of its agents within the scope of that authority.

68.     FracTel and NUSO suggested they could not provide meaningful source-identification assistance without a subpoena due to Customer Proprietary Network Information ("CPNI") restrictions. That position is contrary to federal law. 47 C.F.R. § 64.2005(d) expressly authorizes a telecommunications carrier to disclose CPNI without customer approval or legal process where disclosure is required by law or is necessary to protect the carrier's rights or property, or to protect users and other carriers from fraudulent, abusive, or unlawful use of telecommunications services.

69.     Plaintiff's contemporaneous notices and recordings identified an ongoing unlawful prerecorded telemarketing campaign. Under these circumstances, Defendants were not prohibited by CPNI rules from identifying upstream sources, cooperating in traceback, and/or taking reasonable mitigation steps. FracTel and NUSO's invocation of "CPNI" as a blanket justification for inaction supports an inference that FracTel and NUSO chose not to act despite having both authority and ability to do so while continuing to carry and profit from the unlawful traffic.

70.     FracTel and NUSO's position would improperly convert the CPNI rules

— designed to protect consumers — into a shield for ongoing robocall fraud, a result the FCC has expressly rejected.

71. The precise upstream sources, ingress trunks, intermediate routing, and account relationships for the calls at issue are uniquely within Defendants' possession and will be confirmed through discovery.

## COUNT I
### TCPA - 47 C.F.R. 64.1200(a)(1)(iii)

72. Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

73. The TCPA implementing regulations prohibit initiating any call (other than emergency calls or calls made with the party's prior express consent) using an automatic telephone dialing system and/or an artificial or prerecorded voice to any service for which the called party is charged for the call. 47 C.F.R. § 64.1200(a)(1)(iii).

74. Plaintiff's Number is billed on a per-call basis and is therefore a service for which Plaintiff is charged for the call within the meaning of § 64.1200(a)(1)(iii).

75. Defendants initiated and/or caused to be initiated at least sixty-nine (69) prerecorded calls to Plaintiff's Number without prior express consent.

76. Defendants' conduct violated 47 C.F.R. § 64.1200(a)(1)(iii).

77. Defendants' violations were willful and/or knowing.

## COUNT II
### TCPA - 47 C.F.R. 64.1200(a)(2)

78.    Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

79.    The TCPA implementing regulations prohibit initiating, or causing to be initiated, any call that includes or introduces an advertisement or constitutes telemarketing, using an ATDS or an artificial or prerecorded voice, to any of the lines or telephone numbers described in § 64.1200(a)(1)(i)-(iii) absent prior express written consent. 47 C.F.R. § 64.1200(a)(2).

80.    The calls at issue constituted telemarketing and introduced an advertisement for a purported debt-relief service.

81.    Plaintiff's Number falls within the protected category described in § 64.1200(a)(1)(iii).

82.    Defendants initiated and/or caused to be initiated the telemarketing calls at issue using an artificial or prerecorded voice and/or an ATDS without the required prior express written consent.

83.    Defendants' conduct violated 47 C.F.R. § 64.1200(a)(2).

84.    Defendants' violations were willful and/or knowing.

## COUNT III
### TCPA - 47 C.F.R. 64.1200(a)(3)

85.    Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

20

86.     The TCPA implementing regulations prohibit initiating any call to any residential line using an artificial or prerecorded voice to deliver a message that includes or introduces an advertisement or constitutes telemarketing without the prior express written consent of the called party, subject to narrow exceptions not applicable here. 47 C.F.R. § 64.1200(a)(3).

87.     Plaintiff's Number is a residential line.

88.     Defendants initiated and/or caused to be initiated at least sixty-nine (69) calls to Plaintiff's Number using an artificial or prerecorded voice to deliver telemarketing without prior express written consent.

89.     Defendants' conduct violated 47 C.F.R. § 64.1200(a)(3).

90.     Defendants' violations were willful and/or knowing.

## COUNT IV
## TCPA - 47 C.F.R. § 64.1200(c)(2)

91.     Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

92.     Plaintiff's Number is registered on the National Do Not Call Registry.

93.     Defendants made repeated telephone solicitations to Plaintiff's Number despite its registration and without consent or an established business relationship, including at least sixty-nine (69) calls between January 20, 2026 and February 6, 2026.

94.     Defendants' conduct violated 47 C.F.R. § 64.1200(c)(2).

21

95. Defendants' violations were willful and knowing, including because Defendants continued after repeated notice, recordings, and regulatory complaints.

96. Each Defendant is likewise liable under principals of respondeat superior for the Do-Not-Call violations committed by its agents and coconspirators, where such acts were undertaken with actual or apparent authority, subsequently ratified, and furthered a common telemarketing enterprise from which Defendants derived benefit.

## COUNT V
## TCPA - 47 C.F.R. § 64.1200(d)(4)

97. Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

98. The TCPA's implementing regulations require that any person or entity making any call for telemarketing purposes must provide the called party with: (I) the name of the individual caller, (ii) the name of the person or entity on whose behalf the call is being made, and (iii) a telephone number or address at which the person or entity may be contacted. 47 C.F.R. § 64.1200(d)(4).

99. Defendants' calls constituted telemarketing and telephone solicitations.

100. Defendants violated 47 C.F.R. § 64.1200(d)(4) because the prerecorded message failed to provide the required identifying information. The message merely stated "Ava with Consumer Transparency Group" and did not provide any telephone number or address at which the responsible person or entity could be contacted.

22

101.   The "Consumer Transparency Group" name provided in the prerecorded message was likely fictitious or materially misleading and did not meaningfully identify the true person or entity on whose behalf the calls were made.

102.   Defendants' conduct was willful and/or knowing.

## COUNT VI
### TCPA - 47 C.F.R. § 64.1601(e)

103.   Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

104.   The TCPA implementing regulations require telemarketers to transmit caller identification information in connection with telemarketing calls, to the extent that caller identification information service is available. 47 C.F.R. § 64.1601(e).

105.   Defendants' calls were telemarketing and telephone solicitations.

106.   Defendant failed to transmit meaningful caller identification information as required by § 64.1601(e), including by transmitting only generic city/state caller-ID name information rather than the name of the entity responsible for the telemarketing calls, suppressing or omitting identifying caller-ID name information, and using rotating caller-ID numbers to impede identification and traceback which caller-ID numbers, when dialed, would not permit a consumer to make a do-not-call request during normal business hours.

107.   Defendants' violations were willful and/or knowing.

## COUNT VII
## MHSSA

108. Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

109. Defendants' calls were telephone solicitations.

110. Plaintiff's Number was listed on the National Do-Not-Call Registry.

111. Plaintiff is a residential telephone subscriber.

112. Defendants violated M.C.L. 445.111a(5) by making telephone solicitations to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal Do-Not-Call Registry.

113. Defendants' calls violated M.C.L. 445.111b(1) by not, at the beginning of each telephone solicitation, stating the telephone solicitors name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request; and, further, a natural person was not available to answer the telephone number at any time when telephone solicitations are being made.

114. Plaintiff suffered loss as a result of Defendants' violations, including per-call charges, time loss, nuisance, and invasion of privacy.

## COUNT VIII
## MCPA

115. Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

116. Defendants engaged in unfair, unconscionable, and deceptive practices in trade or commerce, including using a vague or fictitious identity ("Consumer Transparency Group"), omitting meaningful seller contact information, omitting opt-out capability, employing identity-masking via number rotation and generic caller identification, and soliciting highly sensitive consumer information (including Social Security numbers and credit card information) through an AI voice system without meaningful disclosures.

117. Defendants' conduct violated M.C.L. § 445.903(1).

## COUNT IX
## MTCCCA

118. Plaintiff incorporates paragraphs 1 through 71 as if fully set forth herein.

119. The MTCCCA prohibits any person from using a recorded message to make or cause to be made a telephone call for a commercial purpose unless the call complies with the statutory exceptions not applicable here. M.C.L. § 484.125(2)(a).

120. Defendants used, or caused to be used, a recorded and/or artificial voice message system, including a prerecorded voice identifying as "Ava with Consumer Transparency Group" to place commercial telephone calls to Plaintiff.

121. The calls were made for a commercial purpose, including marketing and promoting purported credit-card debt-relief services.

122. Defendants placed or caused to be placed the recorded-message calls

25

without Plaintiff's consent and outside any statutory exception under M.C.L. § 484.125(2).

123. The statute applies regardless of whether the call was answered, and Plaintiff in fact received numerous calls where the phone rang and disconnected before answer, as well as calls delivering the recorded message.

124. Defendants' use of a recorded message system violated M.C.L. § 484.125(2)(a) for each call placed using the prerecorded/AI voice system.

## PRAYER FOR RELIEF

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter judgment for Plaintiff and against the Defendants, and each of them jointly and severally, as follows:

A. Damages:

i. Statutory damages as provided at 47 U.S.C. § 227(b)(3) for violations of the TCPA implementing regulations alleged:

| Count | Violations |
|-------|------------|
| I | 69 |
| II | 69 |
| III | 69 |

A total of 207 violations at $500.00 per violation, for damages of $103,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of

$310,500.00.

ii.     Statutory damages as provided at 47 U.S.C. § 227(c)(5) for violations of the TCPA implementing regulations alleged:

| Count | Violations |
|-------|-----------|
| IV    | 69        |
| V     | 69        |
| VI    | 69        |

A total of 207 violations at $500.00 per violation, for damages of $103,500.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $310,500.00.

iii.    Statutory damages as provided at M.C.L. § 445.111c(3) for violations of the MHSSA alleged at Count VII: 69 violations at $250.00 per violation, for damages of $17,250.00;

iv.     Statutory damages as provided at M.C.L. § 445.911(2) for violations of the MCPA alleged at Count VIII: 69 violations at $250.00 per violation, for damages of $17,250.00;

v.      Statutory damages as provided at M.C.L. § 484.125(5) for violations of the MTCCCA alleged at Count IX: 69 violations at $1,000.00 per violation, for damages of $69,000.00.

The cumulative total amount of damages claimed in this action, based

27

upon the identified calls, is $724,500.00. Plaintiff seeks the maximum recovery permitted by law. To the extent the Court determines that any portion of the foregoing damages would constitute duplicative recovery, Plaintiff seeks damages up to the maximum non-duplicative amount permitted by law.

B. An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C. An injunction enjoining Defendants and/or Defendants' agents from initiating any telephone calls to Plaintiff's telephone numbers.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: February 9, 2026

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*