**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK W. DOBRONSKI,

                Plaintiff,

v.

FRACTEL LLC, NUSO, LLC, and
DOE DEFENDANTS I-X,

                Defendants.

Case No. 2:26-cv-10464

Hon. Brandy R. McMillion
United States District Judge

Hon. Elizabeth A. Stafford
United States Magistrate Judge

_____

**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT NUSO, LLC'S**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

Plaintiff Mark W. Dobronski, appearing in propria persona, hereby responds

in opposition to Defendant NUSO, LLC's Motion to Dismiss Plaintiff's First

Amended Complaint [ECF No. 21].

NUSO's motion is predicated on a mischaracterization of the First Amended

Complaint. NUSO repeatedly recasts the pleading as alleging only that certain calls

"passed through" its network and that NUSO therefore cannot be liable because it

is a common carrier. But that is not the theory pleaded.

The First Amended Complaint expressly alleges that Plaintiff does not seek

to impose liability on NUSO merely because it is a carrier, but because NUSO

continued   furnishing   essential   telecommunications   services   to   an   unlawful

1

prerecorded telemarketing campaign after receiving repeated, call-specific notice, audio recordings, callback verification, regulatory complaints, and formal service of the summons and original complaint.

The First Amended Complaint alleges that NUSO carried forty-four calls in a larger evolving robocall enterprise sharing a common commercial objective, common target line, common identity-masking architecture, common callback structure, and common use of prerecorded or artificial voice messages. It further alleges that Plaintiff repeatedly provided NUSO with information sufficient to determine whether the calls traversed NUSO's network and to identify the relevant ingress and egress points, trunks, upstream counterparties, customers, resellers, subscribers, and associated accounts through ordinary carrier records, yet the unlawful traffic continued.

Those allegations plausibly support direct liability, ratification, knowing facilitation, concerted-action liability, and vicarious liability. NUSO's motion should therefore be denied.

Plaintiff also denies that Count VI fails as a matter of law. Recent authority, including multiple decisions in the Eastern District of Michigan, recognizes that 47 C.F.R. § 64.1601(e) is enforceable through 47 U.S.C. § 227(c)(5). Plaintiff likewise denies that the Michigan statutory counts are inadequately pleaded. The First Amended Complaint alleges sufficient facts to state plausible claims under

the Michigan Home Solicitation Sales Act, Michigan Consumer Protection Act, and Michigan Telephone Companies as Common Carriers Act.

For these reasons, and for those set forth more fully below, Plaintiff respectfully requests that the Court deny Defendant NUSO, LLC's Motion to Dismiss in its entirety. Alternatively, if the Court concludes that any claim requires additional factual detail, dismissal should be without prejudice and with leave to amend.

Respectfully submitted,

Dated: June 3, 2026

/s/ Mark W. Dobronski
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan  48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

MARK W. DOBRONSKI,

              Plaintiff,

v.

FRACTEL LLC, NUSO, LLC, and
DOE DEFENDANTS I-X,

              Defendants.

Case No. 2:26-cv-10464

Hon. Brandy R. McMillion
United States District Judge

Hon. Elizabeth A. Stafford
United States Magistrate Judge

_____

**BRIEF IN SUPPORT OF**
**PLAINTIFF'S RESPONSE IN OPPOSITION**
**TO DEFENDANT NUSO, LLC'S**
**MOTION TO DISMISS FIRST AMENDED COMPLAINT**

4

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether the First Amended Complaint plausibly alleges TCPA claims against NUSO where Plaintiff alleges that NUSO carried forty-four calls in an evolving prerecorded telemarketing campaign, received repeated call-specific notice and audio recordings, was served with the summons and complaint, and nonetheless continued carrying or enabling the traffic.

   Plaintiff says: Yes.
   NUSO says: No.
   The Court should rule: Yes.

2. Whether NUSO's asserted common-carrier status requires dismissal where Plaintiff alleges high involvement, actual notice, failure to act, ratification, and concerted participation rather than mere passive transmission.

   Plaintiff says: No.
   NUSO says: Yes.
   The Court should rule: No.

3. Whether the First Amended Complaint plausibly alleges vicarious liability, ratification, and concerted-action liability against NUSO under federal common-law agency principles.

   Plaintiff says: Yes.
   NUSO says: No.
   The Court should rule: Yes.

4. Whether Count VI should be dismissed on the ground that 47 C.F.R. § 64.1601(e) lacks a private right of action.

   Plaintiff says: No.
   NUSO says: Yes.
   The Court should rule: No.

5. Whether the First Amended Complaint plausibly states claims under the MHSSA, MCPA, and MTCCCA.

> Plaintiff says: Yes.
> NUSO says: No.
> The Court should rule: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 WL 177598 (W.D. Wash. Jan. 22, 2026)

*Barton v. Bright Solar Mktg. LLC*, No. 3:25-cv-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)

*De la Cabada v. Ytel, Inc.*, No. 19-cv-07178-JSC, 2020 WL 1156909 (N.D. Cal. Mar. 10, 2020)

*Dobronski v. CHW Grp., Inc.*, No. 2:24-cv-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025)

*Dobronski v. Daraujo*, No. 2:25-cv-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025), report and recommendation adopted, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025)

*Dobronski v. Global Tel\*Link Corp.*, No. 2:25-cv-10097-SJM-EAS, ECF No. 13 (E.D. Mich. July 17, 2025)

*Dobronski v. Ins. Supermarket Inc.*, No. 2:23-cv-10149, 2025 WL 3121332 (E.D. Mich. Aug. 1, 2025)

*Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025)

*Dobronski v. Uppleger*, No. 2:25-cv-10168, 2026 WL 905121 (E.D. Mich. Mar. 31, 2026)

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)

*Hurley v. Messer*, No. 3:16-cv-09949, 2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018)

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)

*Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447 (S.D. Cal. July 12, 2017)

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024)

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012)

*Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025)

*Novia v. Mobiz, Inc.*, No. 25-cv-11036-AK, 2026 WL 770036 (D. Mass. Mar. 18, 2026)

*Off. of Att'y Gen. of Fla. v. Smartbiz Telecom LLC*, 688 F. Supp. 3d 1230 (S.D. Fla. 2023)

*Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026)


*In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)

*In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961 (2015)


47 U.S.C. § 227(b), (c)

47 C.F.R. §§ 64.1200, 64.1601(e)


Fed. R. Civ. P. 8

Fed. R. Civ. P. 12(b)(6)

## INTRODUCTION

NUSO's motion asks the Court to resolve factual disputes in NUSO's favor at the pleading stage.

NUSO says it is merely a common carrier. The First Amended Complaint alleges more. It alleges that NUSO carried, routed, interconnected, enabled, or was otherwise associated with forty-four calls in an ongoing prerecorded/artificial-voice telemarketing campaign. FAC ¶¶ 17, 44, 49. It alleges that Plaintiff provided NUSO contemporaneous, call-specific notice, including dates, times, displayed caller-identification numbers, caller-identification names, and audio recordings. FAC ¶¶ 25-31. It alleges that Plaintiff's callback testing undermined the spoofing explanation. FAC ¶¶ 38-44, 61-67. It alleges that NUSO was served with the summons and original complaint on March 4, 2026, and that the unlawful traffic continued after service. FAC ¶¶ 68-69, 80-86.

Those are not allegations of passive carriage. They are allegations of post-notice facilitation, ratification, knowing allowance, failure to mitigate, and concerted participation in an evolving unlawful robocall campaign.

NUSO's motion also overstates *Dobronski v. Global Tel*Link Corp.* That case involved inmate calls where the pleading itself identified the inmate as the caller and the carrier merely provided prison calling services. This case involves a commercial prerecorded telemarketing campaign; repeated notice; recordings;

9

callback testing; evasive caller-identification practices; and continued calls after notice. *Global Tel\*Link* does not create a categorical carrier-immunity rule. Indeed, NUSO's own Exhibit A recognizes that a common carrier may be liable where it had a high degree of involvement in, or actual notice of, illegal use and failed to prevent the transmissions.

This case should proceed to discovery.

## STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must construe the complaint in the light most favorable to Plaintiff, accept well-pleaded factual allegations as true, and draw all reasonable inferences in Plaintiff's favor.

A Rule 12(b)(6) motion is not a vehicle for weighing competing factual narratives, accepting NUSO's spoofing defense, deciding whether NUSO truly lacked notice, determining whether NUSO's internal records would corroborate Plaintiff's allegations, or selecting NUSO's preferred inference over Plaintiff's plausible one.

## ARGUMENT

**I.     THE FIRST AMENDED COMPLAINT PLAUSIBLY STATES TCPA CLAIMS AGAINST NUSO**

**A. NUSO's asserted common-carrier status does not require dismissal.**

NUSO's principal theme is that it is a "common carrier" and therefore cannot be liable under the TCPA. That proposition overstates the law.

The FCC's own TCPA framework confirms that the inquiry is functional, not label-driven. In its 2015 TCPA Order, the FCC explained that determining who "initiates" a call requires consideration of the "totality of the facts and circumstances," including who took the steps necessary to physically place the call and whether another person or entity was so involved in placing the call that it should be deemed to have initiated it. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 ¶ 30 (2015). The FCC further recognized that a provider's knowing allowance of unlawful use is relevant to whether the provider may be treated as sufficiently involved in the call. *Id.* That principle matters here because Plaintiff does not allege neutral, passive carriage. He alleges repeated call-specific notice, audio recordings, callback verification, service of the complaint, continued traffic after notice, and failure to provide meaningful traceback or mitigation information.

Plaintiff does not dispute that a carrier acting in a purely passive capacity ordinarily is not liable merely because it transmits calls made by others. But NUSO

11

identifies no authority holding that common-carrier status creates categorical immunity where the pleaded facts plausibly show a high degree of involvement, actual notice coupled with failure to act, or conduct sufficient to deem the provider to have made, enabled, facilitated, or ratified the unlawful calls.

Authority is to the contrary. Courts have recognized that common carriers are not immune from TCPA liability where there is a sufficiently high degree of involvement or actual notice coupled with failure to take steps to prevent unlawful transmissions. *See Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017) ("Common carriers are not liable under the TCPA absent a high degree of involvement or actual notice of an illegal use and failure to take steps to prevent such transmissions"); *De la Cabada v. Ytel, Inc.,* No. 19-cv-07178-JSC, 2020 WL 1156909, at *5 (N.D. Cal. Mar. 10, 2020).

That is precisely what Plaintiff alleges here. The First Amended Complaint does not seek to impose liability on NUSO merely because some calls happened to pass through its network. Rather, Plaintiff alleges that: (1) at least forty-four calls in the unlawful prerecorded telemarketing campaign traversed or were associated with NUSO's network; (2) Plaintiff gave NUSO contemporaneous, call-specific notice identifying dates, times, caller-identification numbers, caller-identification names, and audio recordings; (3) Plaintiff's callback testing undermined NUSO's suggestion that the displayed numbers were merely spoofed; (4) NUSO was

formally served with the summons and original complaint on March 4, 2026; and (5) even after those repeated forms of notice, the traffic continued. FAC ¶¶ 17, 25-31, 38-44, 68-69, 80-86.

Accepted as true, those allegations plausibly take NUSO outside the realm of a merely passive conduit.

**B. The First Amended Complaint plausibly alleges direct liability.**

The First Amended Complaint alleges considerably more than abstract transit. It alleges an evolving prerecorded telemarketing enterprise using rotating caller-identification numbers, generic city/state caller-identification name information, changing recorded personas, and callback functionality routing Plaintiff back into the same or substantially similar robocall system. FAC ¶¶ 21-24, 38-44, 52-64. It further alleges that NUSO continued furnishing telecommunications services necessary for that campaign after receiving repeated, call-specific notice and audio proof. FAC ¶¶ 25-31, 80-86.

At the pleading stage, that is enough. Plaintiff is not required to plead NUSO's internal routing logs, customer files, traceback materials, reseller records, subscriber records, or trunk data before discovery. Those matters are uniquely within Defendants' possession. FAC ¶¶ 27, 48, 77, 81, 93.

NUSO's argument improperly asks the Court to infer neutral carriage notwithstanding allegations of continued enabling, facilitation, and ratification after actual notice. Rule 12(b)(6) does not permit that.

### C. NUSO's reliance on *Global Tel\*Link* is misplaced.

NUSO relies on *Dobronski v. Global Tel\*Link Corp.*, No. 2:25-cv-10097-SJM-EAS, ECF No. 13 (E.D. Mich. July 17, 2025), but that case does not control this one.

*Global Tel\*Link* involved inmate calls where the caller was obvious, the recording transparently identified the inmate call, and the allegations showed only that the carrier supplied the calling service through which the inmate placed the calls. There was an obvious alternative explanation from the face of the complaint: the inmate initiated the calls. Here, by contrast, Plaintiff alleges concealed seller identity, rotating caller-identification numbers, generic CNAM, prerecorded debt-relief solicitations, callback loopback into the same or substantially similar robocall system, and continued NUSO carriage after repeated notice. FAC ¶¶ 21-24, 38-44, 52-64, 80-86.

Indeed, NUSO's own Exhibit A recognizes the applicable exception. In *Global Tel\*Link*, Judge Murphy noted that "a common carrier may be liable for calls only if it had a high degree of involvement in, or actual notice of, an illegal use and fails to take steps to prevent such transmissions." *Dobronski v. Global*

*Tel\*Link Corp.,* No. 2:25-cv-10097-SJM-EAS, ECF No. 13, PageID.67 n.3 (E.D. Mich. July 17, 2025), attached to NUSO's motion at ECF No. 21-2, PageID.184.

That exception is exactly what Plaintiff pleads here. Unlike *Global Tel\*Link,* this case involves repeated call-specific notice, audio recordings, callback testing, post-notice continuation, formal service of the summons and complaint, and failure to provide meaningful traceback or mitigation information. *Global Tel\*Link* therefore supports denial of NUSO's motion because it confirms that the common-carrier rule does not protect a carrier that has actual notice of illegal use and fails to take steps to prevent further unlawful transmissions.

### D. NUSO's actual-notice argument is a fact dispute, not a pleading defect.

NUSO argues that forty-four calls, complaints, FCC reports, audio recordings, callback verification, and formal service are not enough to establish actual notice. That argument improperly asks the Court to weigh the sufficiency and credibility of Plaintiff's notices.

The First Amended Complaint alleges that Plaintiff provided NUSO contemporaneous, time-stamped notice identifying unlawful calls by date, time, displayed caller-ID number, and caller-ID name, if any. ECF No. 18, PageID.110, ¶ 25. It alleges that Plaintiff provided audio recordings of the prerecorded messages. ECF No. 18, PageID.110, ¶ 26. It alleges that those notices and recordings supplied more than sufficient information for NUSO to determine

whether the calls traversed its network and, if so, to identify relevant ingress and egress points, trunks, upstream counterparties, and associated accounts through ordinary call-detail records and routing/interconnect data. ECF No. 18, PageID.110, ¶ 27. It further alleges that the unlawful campaign continued despite that notice. ECF No. 18, PageID.111, 125-127, ¶¶ 28-31, 80-86.

NUSO's reliance on cases decided at summary judgment does not support dismissal. Whether NUSO actually received the notices, what NUSO did in response, whether NUSO's internal records corroborate or refute Plaintiff's call records, and whether NUSO took reasonable steps to prevent further transmissions are factual issues for discovery.

NUSO also attempts to minimize service of the lawsuit as notice. But Plaintiff does not rely on service alone. Service is one component of a broader notice record that includes call-specific notices, audio recordings, callback verification, FCC complaints, and post-service continuation. At the pleading stage, those allegations plausibly allege actual notice and failure to act.

Nor may NUSO avoid plausible notice allegations by choosing not to look. The Supreme Court has recognized that willful blindness may satisfy a knowledge requirement where a party subjectively believes there is a high probability that a fact exists and takes deliberate actions to avoid learning that fact. *Global-Tech Appliances, Inc. v. SEB S.A.,* 563 U.S. 754, 769 (2011). That principle is relevant

here. The FAC alleges that Plaintiff gave NUSO call-specific dates, times, caller-ID information, audio recordings, callback verification, FCC complaints, and lawsuit notice, and further alleges that NUSO's own routing, call-detail, interconnect, and account records could identify the relevant call paths. ECF No. 18, PageID.110-111, 125-126, ¶¶ 25-31, 77, 80-84. If NUSO ignored those materials, failed to check the records that would confirm or refute the traffic, or continued carrying the campaign while avoiding the information in its own possession, that is not a pleading defect. It is, at minimum, a factual issue supporting actual notice, deliberate ignorance, and post-notice ratification.

### E. NUSO's *Loper Bright* argument does not support dismissal.

NUSO suggests that the FCC's common-carrier framework is "uncertain" after *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244, 219 L. Ed. 2d 832 (2024). That argument is not a basis for dismissal.

First, NUSO itself relies on the common-carrier framework when it helps NUSO. It cannot simultaneously invoke the passive-carrier rule while asking the Court to disregard the related actual-notice and high-involvement limitation.

Second, the Court need not mechanically defer to any agency interpretation to deny dismissal. Plaintiff's allegations plausibly state that NUSO knowingly allowed, materially assisted, facilitated, and ratified an unlawful prerecorded telemarketing campaign after repeated notice. Those allegations support liability

17

under ordinary pleading principles, agency principles, and the TCPA's remedial purpose.

Third, the Sixth Circuit has recognized the common-carrier exception in discussing TCPA liability. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627, 635 (6th Cir. 2015). At minimum, NUSO's *Loper Bright* argument presents a merits question not suitable for dismissal at the pleading stage.

**F. The First Amended Complaint plausibly alleges vicarious liability, ratification, and concerted participation.**

NUSO separately argues that Plaintiff fails to plead vicarious liability. But TCPA vicarious liability is governed by federal common-law agency principles, including actual authority, apparent authority, and ratification. *In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584-87 ¶¶ 28-35 (2013). The FCC's *Dish Network* ruling confirms that TCPA liability may rest on federal common-law agency principles where the facts support agency, apparent authority, or ratification, and that the agency inquiry turns on practical control, authorization, benefit, and ratification—not formal labels alone. *Id.*

The First Amended Complaint plausibly alleges enough to proceed. Plaintiff alleges that NUSO's continued provision of essential services after actual notice assisted, facilitated, and ratified the unlawful calls. ECF No. 18, PageID.126, ¶ 83. Plaintiff alleges NUSO profited from the traffic and failed to suspend, block, mitigate, traceback, or otherwise intervene after notice. ECF No. 18, PageID.125-

18

126, ¶¶ 80-84. Plaintiff also alleges an integrated calling campaign using a shared architecture: rotating caller-ID numbers, prerecorded/artificial voices, incomplete identification, no opt-out, common debt-relief/credit-services objectives, and callback routing to the same or substantially similar system. ECF No. 18, PageID.109-114, 120-125, ¶¶ 18-43, 52-76.

NUSO's argument depends on treating the unknown campaign actors, resellers, customers, subscribers, upstream providers, downstream providers, and carrier participants as isolated actors whose relationships must be disregarded before discovery. But those relationships are uniquely within Defendants' knowledge. Plaintiff is not required to plead NUSO's internal contracts, routing records, reseller agreements, subscriber records, customer records, trunk records, or traceback materials before discovery, particularly where the First Amended Complaint alleges that NUSO's own records will identify relevant accounts, trunks, routing, and call paths. ECF No. 18, PageID.110-111, 114-115, 125, 126, 130, ¶¶ 27, 48, 77, 81, 93.

Those allegations plausibly support ratification, knowing allowance, substantial assistance, and concerted participation at the pleading stage. Whether NUSO actually had control, accepted benefits, knew the relevant facts, ratified the conduct, or maintained relationships with the responsible customers, resellers,

subscribers, or upstream actors are discovery issues—not grounds for Rule 12(b)(6) dismissal.

## II.   COUNT VI PLAUSIBLY STATES A CLAIM UNDER 47 C.F.R. § 64.1601(e)

NUSO argues that Count VI should be dismissed because § 64.1601(e) has no private right of action. Recent authority overwhelmingly supports Plaintiff's position.

Section 227(c)(5) authorizes a private action for violations of regulations prescribed under § 227(c). The FCC's caller-identification rule, 47 C.F.R. § 64.1601(e), is enforceable through § 227(c)(5). Multiple recent decisions have so held.

In *Dobronski v. SelectQuote Insurance Services*, the court held that § 64.1601(e) is enforceable through § 227(c)(5), explaining that the caller-identification rule was promulgated under § 227(c) and falls within the private-right-of-action language of § 227(c)(5). 773 F. Supp. 3d 373, 380 (E.D. Mich. 2025). In *Dobronski v. Insurance Supermarket Inc.*, the court likewise recognized a private right of action for § 64.1601(e) violations. No. 2:23-cv-10149, 2025 WL 3121332, at *14 (E.D. Mich. Aug. 1, 2025). The court reached the same conclusion again in *Dobronski v. CHW Group, Inc.*, No. 2:24-cv-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025).

The trend continued in *Dobronski v. Daraujo*, where the court recognized the current split but did not dismiss the § 64.1601(e) claim on private-right grounds. No. 2:25-cv-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025), report and recommendation adopted, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025). And in *Dobronski v. Uppleger*, the court allowed a § 64.1601(e) claim to proceed. No. 2:25-cv-10168, 2026 WL 905121 (E.D. Mich. Mar. 31, 2026).

Courts outside this District have reached the same conclusion. *See Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025); *Barton v. Bright Solar Mktg. LLC*, No. 3:25-cv-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 WL 177598 (W.D. Wash. Jan. 22, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026); *Novia v. Mobiz, Inc.,* No. 25-cv-11036-AK, 2026 WL 770036 (D. Mass. Mar. 18, 2026).

NUSO cites older contrary decisions. But the more recent authority is better reasoned and follows the statutory text. Section 227(c)(5) creates a private right of action for violations of regulations prescribed under § 227(c). Section 64.1601(e) is such a regulation. The Court should follow the recent line of decisions recognizing the private right.

At minimum, the current split of authority defeats NUSO's request for dismissal with prejudice. Count VI should proceed.

## III.   THE MICHIGAN STATUTORY CLAIMS ARE ADEQUATELY PLEADED

### A.  The MHSSA and MTCCCA counts survive for the same reasons as the TCPA counts.

NUSO's argument against the Michigan Home Solicitation Sales Act and Michigan Telephone Companies as Common Carriers Act counts simply repeats its TCPA theme: NUSO says it did not make the calls and was only a carrier.

That argument fails at this stage because the First Amended Complaint alleges more than passive carriage. Plaintiff alleges post-notice conduct, continued provision of essential services, failure to mitigate, identity-masking architecture, prerecorded telemarketing, and NUSO's continued association with the campaign after notice. ECF No. 18, PageID.123-128, 136-138, ¶¶ 68-86, 132-38, 142-48.

The MHSSA applies to telephone solicitations and entities that make or cause telephone solicitations to be made. The MTCCCA likewise regulates prohibited telephone contacts. Plaintiff's theory is that NUSO's post-notice conduct caused, enabled, facilitated, or ratified the continuation of the unlawful telemarketing contacts. That is sufficient at the pleading stage.

To the extent NUSO contends the Michigan statutes do not apply to a voice provider under any circumstances, that argument depends on a disputed characterization of NUSO's role. The First Amended Complaint plausibly alleges that NUSO's role was not merely passive.

**B. The MCPA count is sufficiently pleaded, or at minimum should not be dismissed with prejudice.**

NUSO argues that the MCPA count fails because Plaintiff does not identify an enumerated deceptive practice. But the First Amended Complaint alleges deceptive and unfair practices in trade or commerce, including the campaign's use of vague or fictitious identities, omission of meaningful seller contact information, omission of opt-out capability, identity masking through number rotation and generic caller identification, and solicitation of sensitive consumer information through an AI/prerecorded voice system without meaningful disclosures. ECF No. 18, PageID.137, ¶ 140.

Those allegations plausibly implicate enumerated MCPA prohibitions, including practices causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection, or certification of goods or services, and practices using deceptive representations or designations in connection with goods or services. Plaintiff is not required at the pleading stage to prove the precise internal role NUSO played in the campaign before discovery into NUSO's customers, resellers, subscribers, routing, and traceback records.

The MCPA is not limited to common-law fraud. It covers unfair, unconscionable, or deceptive methods, acts, or practices in trade or commerce. M.C.L. § 445.903(1). The First Amended Complaint pleads the content, dates,

23

caller-ID numbers, campaign names, and deceptive calling architecture with far more particularity than Rule 8 requires.

NUSO's argument again depends on treating NUSO as a passive carrier. But Plaintiff alleges that NUSO's post-notice conduct facilitated, enabled, or ratified the campaign. If the Court concludes that Plaintiff should identify particular MCPA subsections more precisely, the proper remedy is leave to amend, not dismissal with prejudice.

## IV.  DISMISSAL WITH PREJUDICE WOULD BE IMPROPER

Even if the Court finds any count insufficiently pleaded, dismissal with prejudice would be improper.

This case is at the pleading stage. The relevant network, routing, reseller, subscriber, customer, account, trunk, and call-path information is uniquely within NUSO's knowledge. Plaintiff has alleged that NUSO's call-detail records, routing data, and interconnect logs will corroborate Plaintiff's call records and identify all calls placed as part of the campaign. ECF No. 18, PageID.125, ¶ 77. Plaintiff has also alleged that Defendants are uniquely positioned to identify the entities involved in the campaign. ECF No. 18, PageID.110-111, 114-115, 126, 130, ¶¶ 27, 48, 81, 93.

Under those circumstances, dismissal with prejudice would reward opacity. If the Court believes more detail is required, Plaintiff should be granted leave to

amend after NUSO identifies the relevant customer/reseller/subscriber/account relationships and call-path data.

## CONCLUSION

NUSO's motion asks the Court to accept NUSO's preferred factual narrative and disregard the First Amended Complaint's actual allegations. That is not the Rule 12(b)(6) standard.

Plaintiff plausibly alleges that NUSO was repeatedly placed on call-specific notice of an ongoing prerecorded/artificial-voice telemarketing campaign, received audio recordings, was served with the original Complaint, knew callback testing undermined the spoofing explanation, and nonetheless continued to be associated with the same or materially indistinguishable campaign after notice. Those allegations plausibly state TCPA and related Michigan statutory claims.

Plaintiff respectfully requests that the Court deny Defendant NUSO, LLC's Motion to Dismiss in its entirety. Alternatively, if any claim is found deficient, Plaintiff requests leave to amend.

Respectfully submitted,

Dated: June 3, 2026

/s/ Mark W. Dobronski
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan  48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

25

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will serve notice upon all counsel of record by electronic mail.


Dated: June 3, 2026                    /s/ Mark W. Dobronski
                                       Mark W. Dobronski