## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

MARK W. DOBRONSKI,

        Plaintiff,

v.

FRACTEL LLC, NUSO, LLC, and
DOE DEFENDANTS I-X,

        Defendants.

Case No. 2:26-cv-10464

Hon. Brandy R. McMillion
United States District Judge

Hon. Elizabeth A. Stafford
United States Magistrate Judge

_____

### PLAINTIFF'S RESPONSE IN OPPOSITION
### TO DEFENDANT FRACTEL LLC'S
### <u>MOTION TO DISMISS FIRST AMENDED COMPLAINT</u>

Plaintiff Mark W. Dobronski, appearing *in propria persona*, responds in opposition to Defendant FracTEL LLC's Motion to Dismiss Plaintiff's First Amended Complaint [ECF No. 23]. FracTEL's motion rests on a false premise: that Plaintiff seeks to impose TCPA and state-law liability merely because FracTEL is a carrier whose network passively transmitted calls made by others. That is not what the First Amended Complaint alleges.

Plaintiff alleges that FracTEL was repeatedly placed on call-specific notice of an ongoing unlawful prerecorded/artificial-voice telemarketing campaign; received dates, times, caller-ID numbers, caller-ID names, and audio recordings; was served with the original Complaint; was told that Plaintiff's callback testing

1

undermined the spoofing explanation; promised cooperation in exchange for dismissal without prejudice; failed to provide meaningful call-path/customer/reseller/subscriber information; and then continued to be associated with the same or materially indistinguishable campaign after notice.

At the Rule 12(b)(6) stage, those allegations must be accepted as true and all reasonable inferences must be drawn in Plaintiff's favor. FracTEL's motion instead asks the Court to accept FracTEL's factual narrative: that FracTEL is merely a passive common carrier, that the caller-ID numbers were spoofed, that FracTEL lacked actual notice, and that the continuing calls were unrelated. Those are fact disputes. They are not grounds for dismissal.

Plaintiff respectfully requests that the Court deny FracTEL's Motion to Dismiss in its entirety. Alternatively, if the Court concludes that any claim requires additional factual detail, dismissal should be without prejudice and with leave to amend.

Respectfully submitted,

Dated: June 3, 2026

/s/ Mark W. Dobronski
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan  48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

2

**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

MARK W. DOBRONSKI,

               Plaintiff,

v.

FRACTEL LLC, NUSO, LLC, and
DOE DEFENDANTS I-X,

               Defendants.

Case No. 2:26-cv-10464

Hon. Brandy R. McMillion
United States District Judge

Hon. Elizabeth A. Stafford
United States Magistrate Judge

_____

**BRIEF IN SUPPORT OF PLAINTIFF'S RESPONSE IN OPPOSITION
TO DEFENDANT FRACTEL LLC'S
MOTION TO DISMISS FIRST AMENDED COMPLAINT**

3

## CONCISE STATEMENT OF ISSUES PRESENTED

1. Whether the First Amended Complaint plausibly states TCPA claims against FracTEL where Plaintiff alleges 145 FracTEL-associated calls in a continuing prerecorded/artificial-voice telemarketing campaign, repeated call-specific notice, audio recordings, callback testing undermining spoofing, service of the original Complaint, promised cooperation, incomplete disclosure, and continued calls after notice.

   Plaintiff says: Yes.
   FracTEL says: No.
   The Court should rule: Yes.

2. Whether FracTEL's asserted common-carrier status requires dismissal where Plaintiff alleges actual notice, high involvement, failure to mitigate, knowing allowance, ratification, and post-notice facilitation rather than mere passive transmission.

   Plaintiff says: No.
   FracTEL says: Yes.
   The Court should rule: No.

3. Whether Count VI plausibly states a claim under 47 C.F.R. § 64.1601(e), enforceable through 47 U.S.C. § 227(c)(5).

   Plaintiff says: Yes.
   FracTEL says: No.
   The Court should rule: Yes.

4. Whether the Michigan statutory counts should survive where they arise from the same pleaded telemarketing campaign and FracTEL's alleged post-notice facilitation, ratification, and failure to mitigate.

   Plaintiff says: Yes.
   FracTEL says: No.
   The Court should rule: Yes.

## CONTROLLING OR MOST APPROPRIATE AUTHORITY

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)

*Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 WL 177598 (W.D. Wash. Jan. 22, 2026)

*Barton v. Bright Solar Mktg. LLC*, No. 3:25-cv-05310-DGE, 2025 WL 2880136 (W.D. Wash. Oct. 9, 2025)

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)

*Charvat v. EchoStar Satellite, LLC*, 630 F.3d 459 (6th Cir. 2010)

*De la Cabada v. Ytel, Inc.*, No. 19-cv-07178-JSC, 2020 WL 1156909 (N.D. Cal. Mar. 10, 2020)

*Dobronski v. CHW Grp., Inc.*, No. 2:24-cv-11649, 2025 WL 2426370 (E.D. Mich. Aug. 21, 2025)

*Dobronski v. Daraujo*, No. 2:25-cv-10169, 2025 WL 3908484 (E.D. Mich. Dec. 1, 2025), report and recommendation adopted, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025)

*Dobronski v. Global Tel\*Link Corp.*, No. 2:25-cv-10097-SJM-EAS, ECF No. 13 (E.D. Mich. July 17, 2025)

*Dobronski v. Ins. Supermarket Inc.*, No. 2:23-cv-10149, 2025 WL 3121332 (E.D. Mich. Aug. 1, 2025)

*Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025)

*Dobronski v. Uppleger*, No. 2:25-cv-10168, 2026 WL 905121 (E.D. Mich. Mar. 31, 2026)

*Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011)

*Hurley v. Messer*, No. 3:16-cv-09949, 2018 WL 4854082 (S.D.W. Va. Oct. 4, 2018)

*Imhoff Inv., L.L.C. v. Alfoccino, Inc.*, 792 F.3d 627 (6th Cir. 2015)

*Linlor v. Five9, Inc.*, No. 17-cv-218-MMA (BLM), 2017 WL 2972447 (S.D. Cal. July 12, 2017)

*Loper Bright Enterprises v. Raimondo*, 603 U.S. 369, 144 S. Ct. 2244 (2024)

*Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368 (2012)

*Newell v. JR Cap., LLC*, 791 F. Supp. 3d 571 (E.D. Pa. 2025)

*Novia v. Mobiz, Inc.*, No. 25-cv-11036-AK, 2026 WL 770036 (D. Mass. Mar. 18, 2026)

*Off. of Att'y Gen. of Fla. v. Smartbiz Telecom LLC*, 688 F. Supp. 3d 1230 (S.D. Fla. 2023)

*Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-396-SI, 2026 WL 496609 (D. Or. Feb. 23, 2026)

*In re Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574 (2013)

*In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961 (2015)

Fed. R. Civ. P. 8

Fed. R. Civ. P. 12(b)(6)

47 U.S.C. § 227(b), (c)

47 C.F.R. §§ 64.1200, 64.1601(e)

**INTRODUCTION**

FracTEL's motion asks the Court to resolve factual disputes in FracTEL's favor at the pleading stage. FracTEL says it is merely a common carrier. ECF No. 23, PageID.252. The First Amended Complaint alleges more. It alleges that FracTEL carried, routed, interconnected, enabled, or was otherwise associated with 145 calls in an ongoing prerecorded/artificial-voice telemarketing campaign. ECF No. 18, PageID.108-09, ¶¶ 16-24; PageID.119, ¶ 50. It alleges that Plaintiff provided FracTEL contemporaneous, call-specific notice, including dates, times, displayed caller-ID numbers, caller-ID names, and audio recordings. ECF No. 18, PageID.109-10, ¶¶ 25-28. It alleges that FracTEL was served with the original Complaint and therefore had undeniable notice, yet the calls continued. ECF No. 18, PageID.122-23, ¶¶ 68-69.

The First Amended Complaint also alleges callback testing undermining FracTEL's spoofing explanation. ECF No. 18, PageID.113, ¶¶ 38-43; PageID.121-22, ¶¶ 61-67. It alleges that FracTEL obtained dismissal without prejudice based on promised cooperation, then failed to provide meaningful complete particulars, while post-dismissal calls continued through the same or materially indistinguishable campaign architecture. ECF No. 18, PageID.123-25, ¶¶ 70-76.

Those are not allegations of passive carriage. They are allegations of post-notice facilitation, ratification, knowing allowance, failure to mitigate, and

7

concerted participation in an evolving unlawful robocall campaign. FracTEL's motion disregards those allegations and substitutes its preferred factual narrative. Rule 12(b)(6) does not permit that approach.

FracTEL's motion also asks the Court to accept factual assertions that are already disputed by the record. Since the filing of the First Amended Complaint, Plaintiff has filed an emergency motion for temporary restraining order supported by emails and call evidence showing that FracTEL and its prior counsel received call-specific information, spreadsheets, additional numbers, and audio recordings; represented that information was forwarded to FracTEL; represented that FracTEL had identified resellers and taken action; and yet the calls continued and escalated. *See* ECF No. 22. Plaintiff does not rely on those later materials to amend the FAC through briefing. Rather, those materials confirm why FracTEL's factual assertions — passive carrier, no notice, no meaningful involvement, no ability to mitigate, and no meaningful connection to the continuing campaign — are disputed merits issues, not Rule 12(b)(6) grounds for dismissal.

FracTEL's reliance on *Dobronski v. Global Tel\*Link* is also misplaced. That case involved inmate calls where the pleading itself identified the inmate as the caller and the carrier merely provided prison-calling services. Here, Plaintiff alleges a commercial prerecorded telemarketing campaign; repeated notice; recordings; callback testing; evasive caller-ID practices; promised cooperation;

8

incomplete reseller/customer disclosure; and continued calls after notice. *Global Tel\*Link* does not create a categorical carrier-immunity rule. Indeed, the very order FracTEL attaches recognizes that a common carrier may be liable where it had a high degree of involvement in, or actual notice of, illegal use and failed to prevent the transmissions.

## STANDARD OF REVIEW

To survive a motion to dismiss, a complaint need only contain enough factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). The Court must construe the complaint in the light most favorable to Plaintiff, accept well-pleaded factual allegations as true, and draw all reasonable inferences in Plaintiff's favor.

A Rule 12(b)(6) motion is not a vehicle for weighing competing factual narratives, deciding whether FracTEL's records are accurate, accepting FracTEL's spoofing defense, deciding whether FracTEL really investigated, or choosing FracTEL's preferred inference over Plaintiff's plausible inference. If FracTEL wants to prove it was merely a passive carrier, that is a merits defense for discovery and summary judgment, not a basis to dismiss well-pleaded allegations at the outset.

9

## ARGUMENT

**I.     THE FIRST AMENDED COMPLAINT PLAUSIBLY STATES TCPA CLAIMS AGAINST FRACTEL**

**A. FracTEL's common-carrier argument overstates the law.**

FracTEL's principal theme is that it is a "common carrier" and therefore cannot be liable under the TCPA. That proposition overstates the law and improperly converts an ordinary passive-carrier principle into categorical immunity.

The FCC's own TCPA framework confirms that the inquiry is functional, not label-driven. In its 2015 TCPA Order, the FCC explained that determining who "initiates" a call requires consideration of the "totality of the facts and circumstances," including who took the steps necessary to physically place the call and whether another person or entity was so involved in placing the call that it should be deemed to have initiated it. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7980 ¶ 30 (2015). The FCC further recognized that a provider's knowing allowance of unlawful use is relevant to whether the provider may be treated as sufficiently involved in the call. *Id.*

Plaintiff does not dispute that a carrier acting in a purely passive capacity ordinarily is not liable merely because it transmits a call initiated by someone else. But FracTEL identifies no authority holding that common-carrier status creates categorical immunity where the pleaded facts plausibly show a high degree of

10

involvement, actual notice coupled with failure to act, or conduct sufficient to deem the provider to have made, enabled, facilitated, knowingly allowed, or ratified the unlawful calls.

Authority is to the contrary. Common carriers are generally not liable for purely passive transmission, but courts recognize potential liability where the carrier had a high degree of involvement in the unlawful calls, had actual notice of illegal use and failed to take steps to prevent the transmissions, or otherwise knowingly allowed, facilitated, or ratified the unlawful use of its services. *Imhoff Inv., L.L.C. v. Alfoccino, Inc.,* 792 F.3d 627, 635 (6th Cir. 2015); *Linlor v. Five9, Inc.,* No. 17-cv-218-MMA (BLM), 2017 WL 2972447, at *4 (S.D. Cal. July 12, 2017); *De la Cabada v. Ytel, Inc.*, No. 19-cv-07178-JSC, 2020 WL 1156909, at *5 (N.D. Cal. Mar. 10, 2020); *Hurley v. Messer*, No. 3:16-cv-09949, 2018 WL 4854082, at *4-*5 (S.D.W. Va. Oct. 4, 2018).

That is exactly what Plaintiff pleads here. The First Amended Complaint does not allege merely that a few calls happened to pass through FracTEL. It alleges a sustained unlawful prerecorded/artificial-voice telemarketing campaign; 145 FracTEL-associated calls; repeated call-specific notices; audio recordings; callback testing undermining spoofing; FCC complaints; service of the summons and original complaint; continued calls after service; promised cooperation;

11

incomplete disclosure; and post-dismissal continuation of the same campaign architecture. ECF No. 18, PageID.109-13, ¶¶ 18-43; PageID.119-25, ¶¶ 50-76.

Those allegations plausibly remove FracTEL from the "mere passive carrier" category at the pleading stage. FracTEL's motion asks the Court to accept FracTEL's preferred factual narrative — passive carrier, no meaningful involvement, no actual notice, spoofed caller ID, and no ability to mitigate — while disregarding the pleaded facts and reasonable inferences that favor Plaintiff. Rule 12(b)(6) does not permit that approach.

### B. FracTEL mischaracterizes the First Amended Complaint as alleging only transit.

FracTEL says "the only alleged involvement is that certain calls passed through FracTEL's network." That is incorrect. The First Amended Complaint alleges that FracTEL provided telecommunications services necessary for the calls to reach Plaintiff, including origination, routing, interconnection, and/or intermediate transit. ECF No. 18, PageID.125, ¶ 78. It further alleges that FracTEL's own call-detail records, routing data, and interconnect logs will corroborate Plaintiff's call records and identify all calls placed as part of the campaign. ECF No. 18, PageID.125, ¶ 77.

Most importantly, the FAC alleges that FracTEL continued providing essential services after actual notice and that continued transmission after notice materially assisted, facilitated, and ratified the unlawful calls. ECF No. 18,

12

PageID.125-26, ¶¶ 80-84. FracTEL's argument strips away the notice allegations, callback allegations, post-service allegations, post-dismissal allegations, and cooperation allegations. The Court must evaluate the complaint Plaintiff actually filed, not the narrower complaint FracTEL wishes Plaintiff had filed.

### C. Plaintiff plausibly alleges actual notice.

FracTEL argues that Plaintiff's actual-notice allegations are insufficient. That argument fails because the First Amended Complaint pleads multiple, reinforcing forms of notice.

Plaintiff alleges that he provided FracTEL contemporaneous, time-stamped notice identifying unlawful calls by date, time, displayed caller-ID number, and caller-ID name, if any. ECF No. 18, PageID.110, ¶ 25. Plaintiff alleges that he provided audio recordings of the prerecorded messages. ECF No. 18, PageID.110, ¶ 26. Plaintiff alleges that those notices and recordings were sufficient for FracTEL to determine whether calls traversed its network and, if so, to identify relevant ingress/egress points, trunks, upstream counterparties, and associated accounts through ordinary call-detail records and routing/interconnect data. ECF No. 18, PageID.110, ¶ 27.

Plaintiff further alleges that FracTEL was served with the original Complaint on February 20, 2026 and therefore was undeniably on notice, yet the illegal calls continued. ECF No. 18, PageID.122-23, ¶¶ 68-69. Plaintiff also alleges

13

that FracTEL obtained dismissal without prejudice based on promised cooperation to provide full particulars sufficient to identify downstream actors, but then did not provide meaningful complete particulars. ECF No. 18, PageID.123-24, ¶¶ 70-72.

Those allegations are far more than "general awareness." They are call-specific notice, recording-based notice, lawsuit notice, post-service notice, and post-dismissal notice. FracTEL's denial of actual notice is therefore especially inappropriate for Rule 12(b)(6) resolution.

Nor may FracTEL avoid plausible notice allegations by choosing not to look. The Supreme Court has recognized that willful blindness may satisfy a knowledge requirement where a party subjectively believes there is a high probability that a fact exists and takes deliberate actions to avoid learning that fact. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 769 (2011). That principle is relevant here. The FAC alleges that Plaintiff gave FracTEL call-specific dates, times, caller-ID information, audio recordings, callback verification, FCC complaints, and lawsuit notice, and further alleges that FracTEL's own routing, call-detail, interconnect, and account records could identify the relevant call paths. ECF No. 18, PageID.110-11, PageID.125-26, ¶¶ 25-31, 77, 80-84. If FracTEL ignored those materials, failed to check the records that would confirm or refute the traffic, or continued to be associated with the campaign while avoiding the information in its own possession, that is not a pleading defect. It is, at minimum, a

14

factual issue supporting actual notice, deliberate ignorance, and post-notice ratification.

The Court's existing record further confirms why FracTEL's actual-notice argument cannot be resolved on a motion to dismiss. Plaintiff's emergency TRO materials show that FracTEL's prior counsel confirmed receipt of Plaintiff's spreadsheet, five additional numbers, and audio recording evidence, and represented that those materials were forwarded to FracTEL. The same materials show that FracTEL claimed to have identified resellers and taken action, yet the calls continued. Plaintiff does not rely on those later materials to amend the First Amended Complaint through briefing. Rather, those materials confirm why actual notice, investigation, mitigation, reseller involvement, and FracTEL's post-notice conduct are disputed factual issues inappropriate for dismissal under Rule 12(b)(6).

**D. Callback testing plausibly undermines FracTEL's spoofing defense.**

FracTEL repeatedly emphasizes spoofing. But the FAC pleads why that explanation is implausible, incomplete, or at least disputed. Plaintiff alleges that FracTEL and NUSO deflected by claiming they had no record of the calls and that the caller-ID numbers had been spoofed. ECF No. 18, PageID.113, ¶ 65. Plaintiff then alleges that he reported to FracTEL and NUSO that he had verified that the displayed caller-ID numbers appeared accurate because he dialed the numbers immediately after receiving the calls and the calls were answered by the same

15

identified recorded voice. ECF No. 18, PageID.113, ¶ 66. Even after that information, FracTEL and NUSO apparently took no action, and the calls continued. ECF No. 18, PageID.113, ¶ 67.

The FAC later pleads the same architecture for May 2026 calls: when Plaintiff dialed back the displayed caller-ID number, he received a recorded message from "Amanda with Account Services of Summit Financial" making a similar credit-debt pitch. ECF No. 18, PageID.121, ¶ 61. In every instance, when Plaintiff dialed back the displayed caller-ID number, Plaintiff received a recorded greeting from the same name as in the received recorded-message call and was then transferred into the same or substantially similar credit/debt-relief system. ECF No. 18, PageID.122, ¶¶ 63-64.

At the pleading stage, that callback testing supports the reasonable inference that the displayed numbers were not random unrelated spoofed numbers, but were connected to the campaign's infrastructure. Whether FracTEL can later prove a different explanation is not a Rule 12(b)(6) issue.

### E. FracTEL's reliance on Global Tel*Link is misplaced.

FracTEL attaches *Dobronski v. Global Tel*Link Corp.* as Exhibit A, but that case does not control this one. *Global Tel*Link* involved inmate calls where the complaint itself identified the inmate as the person placing the calls, the calls announced that an inmate was calling, and the carrier provided prison-calling

16

functionality. The Court found that Plaintiff had plausibly alleged only that the inmate initiated the calls, not the carrier.

This case is different. Plaintiff alleges a commercial prerecorded telemarketing campaign; 145 FracTEL-associated calls; rotating caller-ID numbers; vague or false business names; no meaningful opt-out; no meaningful seller identification; call-specific notices; audio recordings; callback testing undermining spoofing; service of the original Complaint; promised cooperation; incomplete disclosure; and post-dismissal continuation of the same or materially indistinguishable campaign. ECF No. 18, PageID.109-26, ¶¶ 18-84.

Indeed, FracTEL's own Exhibit A recognizes the applicable exception. In *Global Tel\*Link*, Judge Murphy noted that "a common carrier may be liable for calls only if it had a high degree of involvement in, or actual notice of, an illegal use and fails to take steps to prevent such transmissions." *Dobronski v. Global Tel\*Link Corp.,* No. 2:25-cv-10097-SJM-EAS, ECF No. 13, PageID.67 n.3 (E.D. Mich. July 17, 2025), attached to FracTEL's motion at ECF No. 23, PageID.271.

That exception is exactly what Plaintiff pleads here. Unlike *Global Tel\*Link*, this case involves repeated call-specific notice, audio recordings, callback testing, post-notice continuation, post-dismissal continuation, promised but incomplete cooperation, and failure to provide meaningful traceback or mitigation information. *Global Tel\*Link* therefore supports denial of FracTEL's motion because it

17

confirms that the common-carrier rule does not protect a carrier that has actual notice of illegal use and fails to take steps to prevent further unlawful transmissions.

### F. FracTEL's *Loper Bright* argument does not support dismissal.

FracTEL suggests that the FCC's common-carrier framework is "uncertain" after *Loper Bright*. That argument is not a basis for dismissal. FracTEL itself relies on the common-carrier framework when it helps FracTEL. It cannot simultaneously invoke the passive-carrier rule while asking the Court to disregard the related actual-notice and high-involvement limitation.

The Court need not mechanically defer to any agency interpretation to deny dismissal. Plaintiff's allegations plausibly state that FracTEL knowingly allowed, materially assisted, facilitated, and ratified an unlawful prerecorded telemarketing campaign after repeated notice. Those allegations support liability under ordinary pleading principles, agency principles, and the TCPA's remedial purpose. At minimum, FracTEL's *Loper Bright* argument presents a merits question not suitable for dismissal at the pleading stage.

### G. Plaintiff plausibly alleges vicarious liability, ratification, and concerted participation.

FracTEL separately argues that Plaintiff fails to plead vicarious liability. But TCPA vicarious liability is governed by federal common-law agency principles, including actual authority, apparent authority, and ratification. *In re Joint Petition*

18

*Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6584-87 ¶¶ 28-35 (2013). The FCC's Dish Network ruling confirms that TCPA liability may rest on federal common-law agency principles where the facts support agency, apparent authority, or ratification, and that the agency inquiry turns on practical control, authorization, benefit, and ratification—not formal labels alone. *Id.*

The First Amended Complaint plausibly alleges enough to proceed. Plaintiff alleges that FracTEL's continued provision of essential services after actual notice assisted, facilitated, and ratified the unlawful calls. ECF No. 18, PageID.126, ¶ 83. Plaintiff alleges FracTEL profited from the traffic and failed to suspend, block, mitigate, traceback, or otherwise intervene after notice. ECF No. 18, PageID.125-26, ¶¶ 80-84. Plaintiff also alleges an integrated calling campaign using a shared architecture: rotating caller-ID numbers, prerecorded/artificial voices, incomplete identification, no opt-out, common debt-relief/credit-services objectives, and callback routing to the same or substantially similar system. ECF No. 18, PageID.109-13, ¶¶ 18-43; PageID.120-25, ¶¶ 52-76.

FracTEL's argument depends on treating the unknown campaign actors, resellers, customers, subscribers, upstream providers, downstream providers, and carrier participants as isolated actors whose relationships must be disregarded before discovery. But those relationships are uniquely within Defendants' knowledge. Plaintiff is not required to plead FracTEL's internal contracts, routing

records, reseller agreements, subscriber records, customer records, trunk records, or traceback materials before discovery, particularly where the First Amended Complaint alleges that FracTEL's own records will identify relevant accounts, trunks, routing, and call paths. ECF No. 18, PageID.110, PageID.114-15, PageID.125-26, PageID.130, ¶¶ 27, 48, 77, 81, 93.

Those allegations plausibly support ratification, knowing allowance, substantial assistance, and concerted participation at the pleading stage. Whether FracTEL actually had control, accepted benefits, knew the relevant facts, ratified the conduct, or maintained relationships with the responsible customers, resellers, subscribers, or upstream actors are discovery issues—not grounds for Rule 12(b)(6) dismissal.

The allegations are even stronger as to FracTEL because the First Amended Complaint alleges that FracTEL obtained dismissal without prejudice based upon promised cooperation, but then failed to provide meaningful complete particulars while post-dismissal calls continued through the same or materially indistinguishable campaign architecture. ECF No. 18, PageID.123-25, ¶¶ 70-76. Those allegations support a reasonable inference that FracTEL knew of the campaign, accepted the benefit of avoiding litigation temporarily, possessed information uniquely within its control, and nevertheless failed to provide

20

meaningful traceback, reseller, customer, subscriber, or mitigation information while the campaign continued.

## II.   COUNT VI SHOULD NOT BE DISMISSED BECAUSE 47 C.F.R. § 64.1601(e) IS PRIVATELY ENFORCEABLE

FracTEL argues that Count VI should be dismissed because § 64.1601(e) has no private right of action. That argument is incorrect. At minimum, the issue is not settled against Plaintiff. Courts in the Eastern District of Michigan have recognized a split on the question whether § 64.1601(e) was promulgated under 47 U.S.C. § 227(c) and whether a private right of action exists. *Dobronski v. Daraujo*, No. 2:25-cv-10169, 2025 WL 3908484, at *8 (E.D. Mich. Dec. 1, 2025), report and recommendation adopted, 2025 WL 3708891 (E.D. Mich. Dec. 22, 2025). But the more recent and better-reasoned authorities have answered that question in Plaintiff's favor.

In *Dobronski v. SelectQuote Insurance Services*, the court concluded that § 64.1601(e) was promulgated to enforce § 227(c), and that the private right of action in § 227(c)(5) is therefore available for violations of § 64.1601(e). *Dobronski v. SelectQuote Ins. Servs.*, 773 F. Supp. 3d 373 (E.D. Mich. 2025). In *Dobronski v. Insurance Supermarket Inc.*, the court held that "the more logical conclusion is that § 64.1601(e) was promulgated to enforce § 227(c), so Plaintiff has a private right of action to bring a claim for violation of the regulation." No. 2:23-cv-10149, 2025 WL 3121332, at *14 (E.D. Mich. Aug. 1, 2025). In

*Dobronski v. CHW Group, Inc.*, the court, "[f]inding Judge Murphy's reasoning persuasive," concluded that "§ 64.1601(e)(1), through § 227(c)(5)(B), provides a private right of action." No. 2:24-cv-11649, 2025 WL 2426370, at *8 (E.D. Mich. Aug. 21, 2025), motion to certify appeal denied, 2025 WL 3068732 (E.D. Mich. Nov. 3, 2025). And in *Dobronski v. Uppleger*, the Eastern District of Michigan expressly held that "there is a private right of action to assert claims under 47 C.F.R. § 64.1601(e)." No. 2:25-cv-10168, 2026 WL 905121, at *10 (E.D. Mich. Mar. 31, 2026).

Other courts have reached the same conclusion. In *Newell v. JR Cap., LLC*, the court explained that Congress, in § 227(c), specifically directed the FCC to evaluate the use of "network technologies" and other methods to protect residential telephone subscribers' privacy rights; that the FCC followed that directive and ultimately promulgated § 64.1601(e) requiring caller ID for telemarketers; and that, based on that history, a violation of § 64.1601(e) is a violation of regulations prescribed under § 227(c). 791 F. Supp. 3d 571, 582 (E.D. Pa. 2025). Other decisions are in accord. *See Barton v. Bright Solar Mktg. LLC*, No. 3:25-cv-05310-DGE, 2025 WL 2880136, at *6 (W.D. Wash. Oct. 9, 2025); *Barton v. Am. Fam. Life Assurance Co. of Columbus*, No. 3:25-cv-05671-TMC, 2026 WL 177598, at *7 (W.D. Wash. Jan. 22, 2026); *Weingrad v. DaBella Exteriors, LLC*, No. 3:25-cv-

396-SI, 2026 WL 496609, at *6 (D. Or. Feb. 23, 2026); *Novia v. Mobiz, Inc.*, No. 25-cv-11036-AK, 2026 WL 770036, at *9 (D. Mass. Mar. 18, 2026).

These authorities defeat FracTEL's contention that Count VI is legally unavailable. At minimum, they show that Plaintiff's claim under § 64.1601(e) is not subject to dismissal as a matter of law. Indeed, where multiple recent courts, including multiple judges in the Eastern District of Michigan, have concluded that § 64.1601(e) is enforceable through § 227(c)(5), dismissal of Count VI would be improper.

Plaintiff's Count VI allegations fit comfortably within that framework. The FAC alleges that Defendants transmitted telemarketing calls using only generic city/state caller-identification name information, failed to transmit meaningful caller-name information identifying the true responsible entity, used rotating caller-identification numbers to impede identification and traceback, and routed callbacks back into the same or substantially similar prerecorded debt-relief / credit-related system without meaningfully identifying the true legal entity responsible for the calls. ECF No. 18, PageID.109-10, ¶¶ 21-24; PageID.121-22, ¶¶ 61-67; PageID.134-35, ¶¶ 126-130. Count VI should therefore proceed.

III.   **THE MICHIGAN STATUTORY CLAIMS ARE ADEQUATELY PLEADED**

   **A. The MHSSA and MTCCCA counts survive for the same reasons as the TCPA counts.**

FracTEL's argument against the Michigan Home Solicitation Sales Act and Michigan Telephone Companies as Common Carriers Act counts simply repeats its TCPA theme: FracTEL says it did not make the calls and was only a carrier. That argument fails at this stage because the FAC alleges more than passive carriage. Plaintiff alleges post-notice conduct, continued provision of essential services, failure to mitigate, identity-masking architecture, prerecorded telemarketing, and FracTEL's continued association with the campaign after notice. ECF No. 18, PageID.123-26, ¶¶ 68-84.

The MHSSA applies to telephone solicitations and entities that make or cause telephone solicitations to be made. The MTCCCA likewise regulates prohibited telephone contacts. Plaintiff's theory is that FracTEL's post-notice conduct caused, enabled, facilitated, or ratified the continuation of the unlawful telemarketing contacts. That is sufficient at the pleading stage. To the extent FracTEL contends the Michigan statutes do not apply to a voice provider under any circumstances, that argument depends on a disputed characterization of FracTEL's role.

24

**B. The MCPA count is sufficiently pleaded, or at minimum should not be dismissed with prejudice.**

FracTEL argues that the MCPA count fails because Plaintiff does not identify an enumerated deceptive practice. But the FAC alleges deceptive and unfair practices in trade or commerce, including the campaign's use of vague or fictitious identities, omission of meaningful seller contact information, omission of opt-out capability, identity masking through number rotation and generic caller identification, and solicitation of sensitive consumer information through an AI/prerecorded voice system without meaningful disclosures. ECF No. 18, PageID.137, ¶ 140.

Those allegations plausibly implicate enumerated MCPA prohibitions, including practices causing a probability of confusion or misunderstanding as to the source, sponsorship, approval, affiliation, connection, or certification of goods or services, and practices using deceptive representations or designations in connection with goods or services. Plaintiff is not required at the pleading stage to prove the precise internal role FracTEL played in the campaign before discovery into FracTEL's customers, resellers, subscribers, routing, and traceback records.

The MCPA covers unfair, unconscionable, or deceptive methods, acts, or practices in trade or commerce. M.C.L. § 445.903(1). The FAC pleads the content, dates, caller-ID numbers, campaign names, and deceptive calling architecture with more particularity than Rule 8 requires. FracTEL's argument again depends on

25

treating FracTEL as a passive carrier. But Plaintiff alleges that FracTEL's post-notice conduct facilitated, enabled, or ratified the campaign. If the Court concludes that Plaintiff should identify particular MCPA subsections more precisely, the proper remedy is leave to amend, not dismissal with prejudice.

## IV.   DISMISSAL WITH PREJUDICE WOULD BE IMPROPER

Even if the Court finds any count insufficiently pleaded, dismissal with prejudice would be improper. This case is at the pleading stage. The relevant network, routing, reseller, subscriber, customer, account, trunk, and call-path information is uniquely within FracTEL's knowledge. Plaintiff has alleged that FracTEL promised cooperation but failed to provide meaningful complete particulars. ECF No. 18, PageID.123-24, ¶¶ 70-72. Plaintiff has also alleged that Defendants' call-detail records, routing data, and interconnect logs will corroborate Plaintiff's call records and identify all calls placed as part of the campaign. ECF No. 18, PageID.125, ¶ 77.

Under those circumstances, dismissal with prejudice would reward opacity. If the Court believes more detail is required, Plaintiff should be granted leave to amend after FracTEL identifies the relevant customer/reseller/subscriber/account relationships and call-path data.

26

## CONCLUSION

FracTEL's motion asks the Court to accept FracTEL's preferred factual narrative and disregard the FAC's actual allegations. That is not the Rule 12(b)(6) standard.

Plaintiff plausibly alleges that FracTEL was repeatedly placed on call-specific notice of an ongoing prerecorded/artificial-voice telemarketing campaign, received audio recordings, was served with the original Complaint, knew callback testing undermined the spoofing explanation, promised cooperation, failed to provide meaningful particulars, and then continued to be associated with the same or materially indistinguishable campaign after notice. Those allegations plausibly state TCPA and related Michigan statutory claims.

Plaintiff respectfully requests that the Court deny FracTEL LLC's Motion to Dismiss in its entirety. Alternatively, if any claim is found deficient, Plaintiff requests leave to amend.

Respectfully submitted,

Dated: June 3, 2026

/s/ Mark W. Dobronski
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan  48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on June 3, 2026, I electronically filed the foregoing document with the Clerk of the Court using the ECF system, which will serve notice upon all counsel of record by electronic mail.


Dated: June 3, 2026                    /s/ Mark W. Dobronski
                                       Mark W. Dobronski